1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

9
10
11

FRANCISCO T. MONTELONGO,                    Case No.  1:13-cv-00956-SKO

12              Plaintiff,                   ORDER ON PLAINTIFF'S COMPLAINT

13          v.                               (Docket No. 1)

14  CAROLYN W. COLVIN,

15  Acting Commissioner of Social Security,

16              Defendant.

17  _____/

18
19
20

## I.  INTRODUCTION

21

Plaintiff Francisco Turrubiartes Montelongo ("Plaintiff") seeks judicial review of a final

22 decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying

23 his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income

24 ("SSI") pursuant to Titles II and XVI of the Social Security Act.  42 U.S.C. §§ 405(g), 1383(c)(3).

25 The matter is currently before the Court on the parties' briefs, which were submitted, without oral

26 argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

27
28

---

[1]  The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 8, 10.)

## II. BACKGROUND

Plaintiff was 43 at the time of his hearing.  (AR 28.)  He has lived with his mother for his entire life.  (AR 28.)  Plaintiff participated in special education classes in fifth and sixth grades and completed high school.  (AR 29.)  Plaintiff contends he cannot work due to schizophrenia, with which he was diagnosed when he was 24 years old.  (AR 31.)  Plaintiff last worked full time cleaning up after construction crews.  (AR 29-30.)

**A.      Relevant Medical History**

Beginning on March 27, 2008, Plaintiff sought treatment from psychiatrist Danilo Fernandez, M.D., with Clinica Sierra Vista.  (AR 225-27.)  Plaintiff had a prior diagnosis of schizophrenia.  (AR 225.)  Medications had been "helpful," but Plaintiff had stopped taking them four years prior, and had become increasingly delusional and paranoid.  (AR 225.)  During his intake, Plaintiff reported poor sleep patterns, poor appetite, mood changes, racing thoughts, paranoid ideations, social withdrawal, aggressive behavior, and suicidal ideation.  (AR 226.)  A mental status examination noted pressured speech, flat affect, sad mood, deficient recent memory, disorganized thought process, hallucinations, poor insight, and poor judgment.  (AR 226.)  Dr. Fernandez diagnosed Plaintiff with schizophrenia and history of substance abuse, and rated his current Global Assessment of Functioning (GAF) score at 55.[2]  (AR 227.)  Dr. Fernandez started Plaintiff on medication, therapy, and case management.  (AR 227.)

In April 2008, Plaintiff's response to treatment was "good" although his prognosis was noted to be "poor," he had no side-effects from his medication, and he was instructed to return in a month.  (AR 223-24.)  In May 2008, Plaintiff reported being "overall well," his prognosis was "fair," and he was instructed to return in two months.  (AR 221-22.)  In July 2008, Plaintiff was a "no show" for his psychiatric appointments.  (AR 220.)  When he returned for an appointment on

---

[2] The GAF scale is a tool for "reporting the clinician's judgment of the individual's overall level of functioning."  Am. Psychiatric Ass'n, Diagnosis & Statistical Manual of Mental Disorders 32 (4th ed. 2000).  The clinician uses a scale of zero to 100 to consider "psychological, social, and occupational functioning on a hypothetical continuum of mental health- illness," not including impairments in functioning due to physical or environmental limitations. *Id.* at 34.  A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.*

1    December 18, 2008, it was noted he had a poor prognosis and response to treatment, and was a

2    high risk for dangerous behaviors.  (AR 219.)

3         On January 20, 2009, Plaintiff was "poorly complian[t] with medication" and reported

4    increased hallucinations ("command voices").  (AR 216.)  In April and July 2009, Plaintiff was a

5    "no show" for his psychiatric appointment.  (AR 212-13.)  When he returned in August 2009,

6    Gary Farber, M.D., noted poor response to treatment and guarded prognosis, and that Plaintiff had

7    been using alcohol.  (AR 210-11.)  Treatment notes for October 2009 revealed fair medication

8    compliance and fair or unremarkable results on mental status examination, except for auditory

9    hallucinations and disorientation.  (AR 208-09.)

10        On January 20, 2010, Clinica Sierra Vista treatment notes indicated improvements, with

11   good medication compliance and good response to treatment.  Plaintiff was doing well and denied

12   auditory hallucinations, and mental status examination revealed normal findings.  (AR 206-07.)  In

13   April 2010, Plaintiff remained medication-compliant and responded well to treatment, denied

14   hallucinations and other symptoms, and was largely intact on his mental status examination.

15   (AR 204-05.)   In June 2010, Plaintiff had no complaints, denied auditory hallucinations and

16   paranoia, had a concrete thought process, and expressed the desire to start working again.  (AR

17   202-03.)  In September 2010, Plaintiff reported not sleeping well, but was otherwise "doing well,"

18   and Nikhil Gera, M.D., completed a mental status examination indicating Plaintiff had a fair

19   prognosis.  (AR 261-62.)  In December 2010, Plaintiff was compliant with medications and had no

20   complaints, and his mental status was unchanged.  (AR 259-60.)

21        On October 12, 2010, state agency reviewing doctor A. Haroun, M.D., completed a

22   psychiatric review technique form.  (AR 230-40.)  Dr. Haroun noted that Plaintiff was diagnosed

23   with schizophrenia, but responded well to treatment.  (AR 240.)  Additionally, Dr. Haroun opined

24   that Plaintiff's mental condition indicated he should avoid production quotas and be limited to

25   simple, repetitive tasks.  (AR 240.)  On March 22, 2011, state agency reviewing doctor Joshua

26   Schwartz, M.D., affirmed Dr. Haroun's decision.  (AR 250.)

27        In March 2011, a Clinica Sierra Vista treatment note indicated good medication

28   compliance, and that Plaintiff had no complaints and was doing well.  (AR 257-58.)  Plaintiff

1   again reported hallucinations and paranoia in June and August 2011, and Dr. Gera adjusted his

2   medication.  (AR 253-56.)  As of November 23, 2011, Plaintiff was doing well with an increased

3   dose of medication, with remission of his reported symptoms and normal mental status on

4   examination, and no side-effects.  (AR 251-52.)

5   **B.      Administrative Proceedings**

6          In July and August 2010, Plaintiff applied for DBI and SSI benefits under Titles II and

7   XVI of the Social Security Act, alleging disability since January 28, 2008.  (AR 105-07, 121.)  In

8   February 2012, following the agency's denial of his application initially and on reconsideration, an

9   administrative law judge ("ALJ") issued a decision finding that Plaintiff was not disabled.  (AR 5-

10  15.)  This became the final decision of the Commissioner of Social Security when the Appeals

11  Council denied review.  (AR 1-3.)  Plaintiff then commenced this action for judicial review

12  pursuant to 42 U.S.C. § 405(g).

13         **1.      Plaintiff's Testimony**

14         Plaintiff appeared, represented by counsel, at his hearing on January 19, 2012.  Plaintiff

15  testified that he was diagnosed with schizophrenia at age 24, and had worked a variety of jobs

16  which did not last due to his condition.  (AR 31, 39.)  Most of the jobs were given to him by

17  friends.  (AR 40.)  Plaintiff stopped working because he "[couldn't] handle work" due to his

18  schizophrenia, and his medication made him drowsy and affected his concentration.  (AR 31, 33.)

19  During his last job cleaning up at a construction site, Plaintiff was sent home every week or two

20  weeks due to his condition, and finally he "just quit."  (AR 36.)  He would sometimes fight with

21  the foreman, who was his friend.  (AR 36.)

22         Plaintiff sought medical treatment at Clinica Sierra Vista for about four years, treating with

23  Dr. Gera every three months, in addition to attending group therapy every Friday.  (AR 32.)

24  Almost daily, Plaintiff heard noises and voices inside his head telling him he could not do

25  anything and that people were coming.  (AR 31, 42.)  Plaintiff took medications for the auditory

26  hallucinations, which improved his condition, but he still heard the voices.  (AR 33.)  Plaintiff had

27  difficulty sleeping due to the voices, and took medication to help him sleep.  (AR 43.)  Plaintiff

28  had a history of alcoholism, but had been sober for over four years.  (AR 35.)

4

1    Plaintiff testified that he had lived with his mother his entire life.  (AR 28.)  He testified he

2  could not live alone because he became paranoid and was unable to handle money.  (AR 37.)

3  Although he had a driver's license, Plaintiff did not feel comfortable driving a car because he

4  became nervous.  (AR 35.)  His sister drove him to the hearing, and bought Plaintiff clothes when

5  she was able to do so.  (AR 34-35.)  Plaintiff did not go to the store alone because he was

6  paranoid.  (AR 34.)  Plaintiff did not have any friends or socialize, attend church, or see movies.

7  (AR 37.)

8         **2.     VE Testimony**

9       Kenneth P. Ferra, a vocational expert ("VE"), testified at the hearing.  (AR 44-46.)

10  Relying upon the Dictionary of Occupational Titles ("DOT"), the VE testified that Plaintiff's past

11  jobs were best classified as construction worker II and farm worker.  (AR 44-45.)

12       The ALJ presented the VE with two hypotheticals.  In the first hypothetical, the ALJ asked

13  the VE whether a hypothetical person of the same age, education, and experience as Plaintiff, who

14  had no exertional limitations and could perform simple, repetitive tasks, but no production work,

15  could perform Plaintiff's past relevant work.  (AR 45.)  The VE stated that the hypothetical

16  person could perform Plaintiff's past work as a cleanup construction worker.  (AR 45.)  However,

17  the VE expressed doubt about the ability to perform Plaintiff's past work as a farm worker,

18  because there might be a quota depending on what type of harvesting was required, which could

19  be considered production work.  (AR 46.)

20       In a second hypothetical, the ALJ asked the VE to assume the same hypothetical person as

21  in the first scenario, but also indicated the hypothetical person would be off-task 15 percent of the

22  workday due to interference from a psychiatric condition.  (AR 46.)  The VE responded that no

23  jobs would be available to the hypothetical person.  (AR 46.)

24  **C.     The ALJ's Decision**

25       The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR

26  24-31.)  The ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA")

27  since January 28, 2008, the alleged onset date.  (AR 10.)  Plaintiff had the severe impairments of

28  schizophrenia and substance abuse in remission.  (AR 10.)  However, Plaintiff did not have an

1  impairment or combination of impairments that met or medically equaled one of the listed

2  impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (AR 11.)  The ALJ

3  determined that Plaintiff had the residual functional capacity ("RFC")[3] to perform a full range of

4  work at all exertional levels, but included the nonexertional limitations to simple, repetitive work

5  and excluded production work. (AR 11.)  Given Plaintiff's RFC, the ALJ determined Plaintiff

6  was capable of performing his past relevant work as a construction worker and as a farm worker.

7  (AR 14.)   In reaching his conclusions, the ALJ also determined that Plaintiff's subjective

8  complaints were not fully credible. (AR 13-14.)

9  **D.      Plaintiff's Contentions on Appeal**

10        Plaintiff contends the ALJ erred by discrediting Dr. Gera's treating opinion, and Plaintiff's

11  own testimony. (Doc. 15, pp. 11, 16.)

12                              **III.  SCOPE OF REVIEW**

13        The ALJ's decision denying benefits "will be disturbed only if that decision is not

14  supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599,

15  601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its

16  judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).

17  Instead, the Court must determine whether the Commissioner applied the proper legal standards

18  and whether substantial evidence exists in the record to support the Commissioner's findings. See

19  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  "Substantial evidence is more than a mere

20  scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th

21  Cir. 2008).  "Substantial evidence" means "such relevant evidence as a reasonable mind might

22  accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

23  (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court "must

24

25  [3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social

26  Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's

27  RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"

28  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

1  consider the entire record as a whole, weighing both the evidence that supports and the evidence

2  that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a

3  specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.

4  2007) (citation and internal quotation marks omitted).

5  **IV.  APPLICABLE LAW**

6  An individual is considered disabled for purposes of disability benefits if he or she is

7  unable to engage in any substantial, gainful activity by reason of any medically determinable

8  physical or mental impairment that can be expected to result in death or that has lasted, or can be

9  expected to last, for a continuous period of not less than twelve months.   42 U.S.C.

10  §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).   The

11  impairment or impairments must result from anatomical, physiological, or psychological

12  abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic

13  techniques and must be of such severity that the claimant is not only unable to do her previous

14  work, but cannot, considering her age, education, and work experience, engage in any other kind

15  of substantial, gainful work that exists in the national economy.   42 U.S.C. §§ 423(d)(2)-(3),

16  1382c(a)(3)(B), (D).

17  The regulations provide that the ALJ must undertake a specific five-step sequential

18  analysis in the process of evaluating a disability.   In the First Step, the ALJ must determine

19  whether the claimant is currently engaged in substantial gainful activity.   20 C.F.R. §§

20  404.1520(b), 416.920(b).  If not, in the Second Step, the ALJ must determine whether the claimant

21  has a severe impairment or a combination of impairments significantly limiting her from

22  performing basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ

23  must determine whether the claimant has a severe impairment or combination of impairments that

24  meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart

25  P, App. 1.  *Id*. §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine

26  whether the claimant has sufficient residual functional capacity despite the impairment or various

27  limitations to perform her past work.  *Id*. §§ 404.1520(f), 416.920(f).  If not, in the Fifth Step, the

28  burden shifts to the Commissioner to show that the claimant can perform other work that exists in

1  significant numbers in the national economy.  *Id*. §§ 404.1520(g), 416.920(g).  If a claimant is

2  found to be disabled or not disabled at any step in the sequence, there is no need to consider

3  subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§

4  404.1520, 416.920.

5                                                  **V.  DISCUSSION**

6  **A.      The ALJ's Treatment of Dr. Gera's Opinion**

7      Plaintiff contends that the ALJ rejected Dr. Gera's opinion with insufficient reasons.

8  (Doc. 15, 11.)   The Commissioner responds that the ALJ gave valid reasons supported by

9  substantial evidence to discredit Dr. Gera's controverted statements, and the Court should defer to

10  the ALJ's interpretation of the medical opinions.  (Doc. 18, 10-11.)

11         **1.      Dr. Gera's Opinion**

12      On December 21, 2011, Nikhil Gera, M.D. and Rick Hobbs, M.S., a behavioral health

13  therapist intern, penned a letter describing Plaintiff's condition, treatment, and capabilities.  (AR

14  264.)  Dr. Gera and Mr. Hobbs stated:

15      Mr. Montelongo has been a client here at Clinica Sierra Vista's Adult Behavioral
        Health Center in Lamont, California for more than three years.  During this time,
16      Mr. Montelongo has received case management, medication management, and
        psychotherapy.  Mr. Montelongo is a regular client and has, on average, weekly
17      contact with this office.

18
        Client qualified for services for a severe and persistent mental illness, paranoid
19      schizophrenia, which is interfering with his ability to nurture healthy relationships,
        maintain gainful employment, and live independently.  Client's symptoms are
20      reinforced by declining self esteem, a declining sense of control over his life, an
        increasing pessimism, increasing thoughts of suicide though client has no[ ] active
21      plan to harm himself or others, and chronic auditory hallucinations.  Client once
        used alcohol as a coping strategy for his mental health symptoms; however, client
22      has remand clean and sober for well over a year now and no longer has a diagnosis
        of alcohol dependency.  Client is also semi-literate and has difficulty completing
23      basic forms without help. Client will likely require mental health services
24      indefinitely.

25  (AR 264.)  Dr. Gera diagnosed Plaintiff with Schizophrenia, Paranoid Type, and explained that his

26  medications included Risperdal and Trazadone.  (AR 264.)  Dr. Gera and Mr. Hobbs concluded

27  that, based on their "professional training, experience, and direct observation, [Plaintiff] is unable

28  to secure and maintain gainful employment of any meaningful kind."  (AR 264.)

                                                        8

**2.      Legal Standards Pertaining to Opinions of Treating Physicians**

"By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "If a treating physician's opinion is 'well-supported . . . and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Id.* Even if a treating physician's opinion is not given controlling weight, the opinion is still entitled to deference; the ALJ must consider specified factors in determining the weight it will be given, including, (1) the length of the treatment relationship and the frequency of examination, and (2) the nature and extent of the treatment relationship. *Id.* Additional factors relevant in evaluating the weight of any medical opinion, not just treating physician opinions, include: (3) the amount of relevant evidence that supports the opinion and the quality of the explanation provided, (4) the consistency of the medical opinion with the record as a whole, (5) the specialty of the physician providing the opinion, (6) and other factors such as the degree of understanding a physician has of Social Security disability programs and their evidentiary requirements and the physician's familiarity with other information in the record. *Id.*

If a treating physician's opinion is not contradicted by another doctor, it may only be rejected for clear and convincing reasons supported by substantial evidence. *Id*. at 632 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Even if the treating physician's opinion is contradicted by another doctor, it may not be rejected unless the ALJ provides specific and legitimate reasons supported by substantial evidence. *Id.* (quoting *Reddick*, 157 F.3d at 725).

**3.      The ALJ Provided Specific and Legitimate Reasons to Discredit Dr. Gera's Opinion**

Dr. Gera's opinion was controverted by the opinions of the state agency reviewing physicians Dr. Haroun and Dr. Schwartz, who opined that Plaintiff was limited only to simple, repetitive tasks and could not perform work that ascribed production quotas. Therefore, the ALJ was required to provide specific and legitimate reasons to discredit Dr. Gera's opinion. In her decision, the ALJ explained,

1
2
3
4
5

"As for the opinion evidence, the undersigned notes that Dr. Gera and Mr. Hobb's opinions that the claimant cannot secure and maintain gainful employment is an issue reserved to the Commissioner.  The undersigned gives less weight to this opinion as it is inconsistent with the other evidence of record.  Dr. Gera and Mr. Hobbs write that claimant has thoughts of suicide, but these are not mentioned in the treatment notes. The claimant's treatment notes indicate some waxing and waning of his schizophrenic symptoms, however, this appears to coincide with claimant's level of compliance with his medication regiment."

6   (AR 14.)    Plaintiff contends the ALJ's reasons for discrediting Dr. Gera's opinion were

7   insufficient.  (Doc. 15, 12.)

8          Plaintiff asserts that the ALJ cannot reject Dr. Gera's statement about Plaintiff's disability

9   merely because it is a legal finding reserved to the Commissioner.  (Doc. 15, 12.)  The Code of

10  Federal Regulations states that although the Commissioner will consider opinions from medical

11  sources on issues such as the claimant's functional capacity and whether the claimant has an

12  enumerated impairment, "the final responsibility for deciding these issues is reserved to the

13  Commissioner."    *Id*. at § 404.1527(d)(2).    Because the ALJ has the sole responsibility of

14  determining whether a claimant meets the statutory definition of a disability, "[a] statement by a

15  medical source [he is] 'disabled' or 'unable to work' does not mean that [the ALJ] will determine

16  that [he is] disabled."  *Id*. at (d)(1); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir.

17  2001) (a medical opinion is not binding on an ALJ with respect to ultimate determination of

18  disability).  The ALJ was not required to give controlling weight to Dr. Gera's opinion on the

19  ultimate issue of Plaintiff's disability.  Moreover, while Plaintiff cites *Reddick v. Chater* for the

20  proposition that an ALJ may not reject a physician's opinion on the ultimate disability issue

21  merely because that issue is reserved to the Commissioner (AR 13 (citing *Reddick*, 157 F.3d 715,

22  725 (9th Cir. 1998))), here the ALJ provided additional bases for rejecting Dr. Gera's opinion.

23         Plaintiff contends the ALJ's assertion that Dr. Gera's opinion was inconsistent with the

24  other evidence on record is inaccurate.  (Doc. 15, 13.)  Specifically, Plaintiff argues that the ALJ's

25  example that Dr. Gera indicated Plaintiff had suicidal ideations was not in the treatment notes was

26  "flat out false."  (Doc. 15, 13.)  Contrary to Plaintiff's assertion, the box on the Psychiatric

27  Progress Note form used by Clinica Sierra Vista indicating Plaintiff had suicidal ideations was *not*

28  checked on any of Plaintiff's treatment notes.  Only on Plaintiff's initial *intake* form in March

1   2008 was "suicidal/homicidal ideation" circled, with no explanation, indicating a 50 percent

2   chance that Plaintiff had suicidal ideations upon his initial intake.  Plaintiff had not started treating

3   with Clinica Sierra Vista during Plaintiff's initial assessment, and the ALJ's statement that any

4   suicidal ideation was not noted in Plaintiff's treatment notes is accurate.  (AR 204, 206, 210, 213-

5   14, 216, 218, 223, 226, 251.)

6          In rejecting Dr. Gera's opinion on the basis of inconsistencies, Plaintiff asserts that the ALJ

7   impermissibly isolated a specific quantum of evidence by focusing on the fact that Plaintiff's

8   treatment notes did not mention suicidal ideation while ignoring other abnormal findings present

9   on numerous mental status examinations.   (Doc. 15, 13.)   However, a medical opinion's

10  inconsistency with the record as a whole is a valid reason to discredit the physician's opinion.  20

11  C.F.R. § 404.1527(d)(3)-(6); *Orn,* 495 F.3d at 631.  Here, the ALJ cited a specific and legitimate

12  reason to discount Dr. Gera's opinion: Dr. Gera indicated in his letter that Plaintiff had "increasing

13  thoughts of suicide," while Plaintiff's treatment notes fail to indicate suicidal ideations beyond the

14  initial intake.  (AR 264.)  Dr. Gera's letter also contradicted his own treatment notes, which made

15  no mention of suicidal ideation.  *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003)

16  (holding that ALJ properly rejected doctor when doctor's conclusions regarding claimant's

17  limitations were not supported by his own treatment notes, and treatment notes neither indicated

18  that claimant would be limited nor demonstrated the doctor recommended such limitations to

19  claimant.)   The ALJ's finding that portions of Dr. Gera's opinion were inconsistent with the

20  medical record does not suggest that the ALJ did not consider the whole of the record.  To the

21  contrary, it demonstrates that in discrediting Dr. Gera's opinion, the ALJ compared Dr. Gera's

22  opinion to all of Plaintiff's medical records, and properly considered the inconsistency of Dr.

23  Gera's opinion with the record as a whole as well as considered inconsistencies in Dr. Gera's own

24  treatment notes.  *Orn,* 495 F.3d at 631.

25         Plaintiff next contends that the ALJ's finding that Plaintiff's symptoms seemingly wax and

26  wane with his medication compliance fails because, (1) waxing and waning of symptoms and

27  difficulty with medication compliance are consistent with Plaintiff's condition, (2) the ALJ is

28  substituting her lay opinion for the treating doctor's opinion without a medical opinion to support

11

1 her assertion;  and (3) the ALJ's characterization is overly broad because Plaintiff still experiences

2 symptoms even when compliant with medication.  (Doc. 15, 14-15.)   Here, the ALJ cited

3 treatment notes indicating Plaintiff's symptoms had increased during periods when he was not

4 medication compliant, and that Plaintiff's symptoms improved and he was "doing well" when

5 compliant with his medications.  (AR 11.)

6 　　　　Plaintiff argues his non-compliance with medication is attributable to the severity of his

7 condition, and the likely result of his mental illness, but he offers no specific evidence and no

8 reference to the record to support such a general claim.  (Doc. 15, pp. 15, 18.)  It is Plaintiff's

9 burden to present such evidence. *Merritt v. Colvin*, No. 12–35942, __ Fed App'x __, 2014 WL

10 1711902, at *2 (9th Cir. Apr. 7, 2014) (unpublished).   Here, as in *Merritt*, Plaintiff has not

11 presented any evidence to suggest that his failure to attend treatment was attributable to his mental

12 impairment.  Moreover, Plaintiff has demonstrated an ability to maintain medication compliance

13 on an ongoing basis since early 2010.  (AR 203-7, 251-62.)

14 　　　　In finding Plaintiff's symptoms were improved on medication, Plaintiff maintains the ALJ

15 was simply substituting her lay opinion for that of the treating physician.  However, the ALJ cited

16 to the treatment notes in the record indicating Plaintiff was "doing well" when he was medication

17 compliant.   For example, treatment notes from May 2008 indicated Plaintiff's medication

18 compliance was fair, he was sober, and his grooming was neat.  (AR 221.)  Plaintiff did not appear

19 at his appointment in July 2008.  (AR 220.)   Similarly, treatment notes from December 2008

20 indicate Plaintiff had stopped using his medication a few months prior.  At his appointment,

21 Plaintiff's grooming was disheveled, he had been using alcohol and methamphetamines heavily,

22 and he exhibited highly dangerous behaviors, with poor eye contact and disorientation.  (AR 218-

23 19.)

24 　　　　Treatment notes from January 2009 also reflect poor medication compliance, and that

25 Plaintiff was still using alcohol and methamphetamines.  Plaintiff heard command voices, his

26 grooming was disheveled, and he was disoriented.  (AR 216.)  In January 2010, when Plaintiff's

27 medication compliance was good, he was oriented, neatly groomed, and exhibited fair judgment

28 and insight.  (AR 206.)  Treatment notes also indicate he exhibited a good response to treatment.

1   Similarly, in April 2010 when medication compliance remained good, Plaintiff was once again

2   neatly groomed and oriented, with intact concentration, and fair judgment and insight.  (AR 204.)

3   His response to treatment was noted as good, and he was "doing well."  (AR 204.)

4        The ALJ's interpretation of Plaintiff's improved condition on medication is reasonable and

5   supported by the record.   Plaintiff's medical records demonstrated that not only were his

6   symptoms suppressed when he complied with his medication, but also that he was able to comply

7   consistently since the beginning of 2010.  (AR 207, 251-62.)  Even to the extent the record may be

8   susceptible to a different interpretation, the Court must defer to the ALJ's decision because it is

9   reasonable and supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

10  Cir. 2005).  Thus, Plaintiff's success with treatment when compliant was a specific and legitimate

11  reason to discredit Dr. Gera's opinion.  *Warre v. Comm'r of Soc. Sec.,* 439 F.3d 1001, 1006 (9th

12  Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for

13  the purpose of determining eligibility for SSI benefits").

14  **B.      The ALJ's Rejection of Plaintiff's Testimony**

15       Plaintiff contends the ALJ did not provide specific, clear, and convincing reasons to reject

16  Plaintiff's testimony about the severity of his symptoms.  (Doc. 15, 17.)   The Commissioner

17  responds that the ALJ's finding that Plaintiff was not credible was supported by substantial

18  evidence.  (Doc. 19, 7.)

19       **1.      Legal Standards**

20       An ALJ must engage in a two-step analysis in evaluating the credibility of a claimant's

21  testimony regarding subjective pain.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First,

22  the ALJ must determine whether the claimant has presented objective medical evidence of an

23  underlying impairment that could reasonably be expected to produce the pain or other symptoms

24  alleged.  *Id*.   The claimant is not required to show that his impairment "could reasonably be

25  expected to cause the severity of the symptom she has alleged; []he need only show that it could

26  reasonably have caused some degree of the symptom."  *Id*. (quoting *Lingenfelter*, 504 F.3d at

27  1036).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can

28

1    only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear

2    and convincing reasons" for the rejection. *Id*. As the Ninth Circuit has explained:

3
     > The ALJ may consider many factors in weighing a claimant's credibility, including
4    > (1) ordinary techniques of credibility evaluation, such as the claimant's reputation
     > for lying, prior inconsistent statements concerning the symptoms, and other
5    > testimony by the claimant that appears less than candid; (2) unexplained or
     > inadequately explained failure to seek treatment or to follow a prescribed course of
6    > treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported
     > by substantial evidence, the court may not engage in second-guessing.
7

8    *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks

9    omitted); see also *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009);

10   20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work

11   record and testimony from physicians and third parties concerning the nature, severity, and effect

12   of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.

13   1997).

14   **2.     The ALJ Articulated Specific, Clear, and Convincing Reasons for Discrediting
             Plaintiff's Testimony**
15

16        The ALJ credited Plaintiff's testimony in part by finding that Plaintiff could only perform

17   simple, repetitive work, and could not perform production work. (AR 12-13.) After reviewing

18   Plaintiff's medical history, the ALJ found that Plaintiff's "statements concerning the intensity,

19   persistence and limiting effects of these symptoms are not credible to the extent they are

20   inconsistent with the above residual functional capacity assessment." (AR 13.) The ALJ noted

21   Plaintiff's inconsistent testimony, including his statement that he had been sober for four years,

22   while treatment notes indicated he had been sober for over a year. In addition, at his hearing on

23   January 19, 2012, Plaintiff testified he last worked six years prior (AR 29), and reported on his

24   Work History Report that he had not worked since 2005-2006 (AR 130), but his SSA record

25   showed significant earnings in 2007 and some employment earnings in 2008 (AR 118).

26        Plaintiff argues that the inconsistencies the ALJ noted with regard to his drug and alcohol

27   use are so "insignificant" that they can "hardly be construed as a clear and convincing reason to

28   reject [Plaintiff's] testimony." (Doc. 15, 24:1-3.) At the hearing, the ALJ asked Plaintiff when

1  he last worked, how he found his jobs (AR 29-31), how much his medications diminished his

2  auditory hallucinations (AR 33), and whether he used to have a problem with alcohol and when he

3  last used it (AR 35).   Plaintiff's responses conflicted with documents in the record and with

4  Plaintiff's prior statements.   Specifically, Plaintiff testified at the January 19, 2012, hearing that he

5  has been sober for "at least four years" (AR 35), but he reported to Dr. Gera that he had abstained

6  from alcohol use since 2010.   (*See* AR 264.)   According to a December 2008 treatment note,

7  Plaintiff reported using alcohol and methamphetamines heavily.   (AR 218.)   A January 2009

8  treatment note indicated Plaintiff was still using alcohol and drugs.   (AR 216.)   In an August 10,

9  2009, treatment note, Plaintiff again reported alcohol use.   (AR 210.)   In conjunction with

10  Plaintiff's statement to Dr. Gera that he had only been sober since 2010, and his report that

11  Plaintiff was using alcohol and methamphetamines heavily in December 2008, using alcohol and

12  drugs in January 2009, and reported alcohol use in August 2009, Plaintiff's January 2012 hearing

13  testimony that he had been sober for "at least 4 years" is inconsistent with the record, warranting a

14  negative inference.   (AR 35.)   While Plaintiff contends these inconsistencies are "minor" and do

15  not supply a foundation for a negative credibility inference, Plaintiff's statements about the date of

16  his sobriety vacillate over a course of years, not merely days or weeks.   This is not a minor

17  inconsistency and constitutes a clear and convincing reason to discount Plaintiff's lay testimony.

18      Additionally, the ALJ noted an inconsistency with regard to Plaintiff's testimony about

19  when he stopped working.   While Plaintiff testified at the January 19, 2012, hearing that he

20  stopped working in early 2006 (AR 29 ("I haven't worked in six years.")), his earning records

21  indicate he earned significant wages through 2007.   This inconsistency, combined with

22  inconsistent statements about his drug and alcohol use, comprise a sufficient basis for the ALJ to

23  discount Plaintiff's credibility. In sum, Plaintiff's multiple inconsistent statements are specific,

24  clear, and convincing reasons to discredit his testimony.

25      Plaintiff also argues that if the ALJ found these statements inconsistent, he was required to

26  question Plaintiff to seek an explanation, i.e., the ALJ was required to ask Plaintiff about each

27  inconsistency in his testimony or in the record during Plaintiff's hearing.   However, Plaintiff cites

28  no binding authority for this proposition, instead citing case authority holding that immigration

1  judges are required to give petitioners an opportunity to resolve discrepancies at their hearing prior

2  to discrediting them in a hearing for asylum.  ("[T]he IJ 'must provide a petitioner with a

3  reasonable opportunity to offer an explanation of any perceived inconsistencies that form the basis

4  of a denial of asylum.'" *Soto-Olarte v. Holder*, 555 F.3d 1089, 1092 (9th Cir. 2009) (quoting

5  *Ordonez v. INS*, 345 F.3d 777, 786 (9th Cir. 2003)).  Although immigration law is administrative

6  law, it does not apply here.

7        The ALJ also found that Plaintiff's allegations of disabling mental symptoms and

8  limitations were not credible because Plaintiff demonstrated a pattern of poor compliance with

9  treatment.  The ALJ noted that, "[t]reatment notes document several instances where claimant

10  stopped taking his medications, with a resultant increase in symptoms," and "[Plaintiff's]

11  medication is effective in resolving or significantly reducing his symptoms including his auditory

12  hallucinations."  (AR 13-14.)

13        Plaintiff argues that his lack of medication compliance is an improper consideration for

14  purposes of credibility because it is a misunderstanding of his mental condition and is an overly

15  broad characterization of the record.  Plaintiff cites *White v. Comm'r Soc. Sec. Admin.*, 572 F.3d

16  272, 283 (6th Cir. 2009) for the proposition that the failure to seek treatment is simply another

17  symptom of the disorder itself.

18        In cases where a claimant suffers mental illness but fails to remain medication compliant,

19  there may be a question whether the individual actually appreciates or understands the value of the

20  treatment or has the cognitive or emotional ability to follow a treatment plan.  *See Garcia v.*

21  *Astrue*, 2011 WL 884126, at *18 (W.D.Wash. Feb.15, 2011) ("When mental illness is involved,

22  assuming that a failure to comply with prescribed treatment suggests a willful failure to comply

23  with prescribed treatment can be illogical.  This is in part because a person suffering from a mental

24  illness may not realize that he needs his medication, or he may not realize even that his 'condition

25  reflects a potentially serious mental illness.'" (quoting *Van Ngyuen v. Chater*, 100 F.3d 1462,

26  1465 (9th Cir.1996))).  In such cases, the failure of an individual to be medication or treatment

27  compliant may speak more to the extent of the underlying disability than to whether the claimant

28  is being entirely candid about the scope or extent of his or her limitations.  In other words, the

1  mental illness itself may constitute a "good reason" why the claimant cannot follow through with

2  prescribed treatment.

3       The record reflects that Plaintiff has been medication-compliant since the beginning of

4  2010, and there is no current lack of medication compliance.  Additionally, the ALJ noted that

5  Plaintiff's current ongoing medication compliance has improved his symptoms markedly.  This

6  reflects that Plaintiff's medications are effective in reducing his symptomatology, but provides

7  little evidence from which to infer Plaintiff's *past* lack of medication compliance arises from the

8  fact that his symptoms are really are not as extensive as he claims.  It is not clear from the record

9  why Plaintiff was unable to maintain medication-compliance prior to 2010.  Viewing the record as

10  a whole, Plaintiff's failure to maintain medication compliance in the past is not a clear and

11  convincing basis to reject Plaintiff's credibility.  *See, e.g., Robb ex rel. Aguilar v. Colvin,* 1:12-CV-

12  02091-SKO, 2014 WL 806966 (E.D. Cal. Feb. 28, 2014).

13       Nevertheless, even to the extent the ALJ erred in considering Plaintiff's past lack of

14  consistent compliance with his prescribed medication, the ALJ provided another clear and

15  convincing basis to reject Plaintiff's credibility -- Plaintiff's own inconsistent statements.  *See*

16  *Carmickle*, 533 F.3d at 1162 (citing *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97

17  (9th Cir. 2004) (even if one reason supporting an invalid credibility finding is invalid, as long as

18  there remains substantial evidence supporting the ALJ's conclusions on credibility, and the error

19  does not negate the ALJ's ultimate conclusion, the error is harmless).

20       Finally, the ALJ noted that Plaintiff continued to work after he was diagnosed with his

21  mental illness.  As Plaintiff notes, this has very little bearing on Plaintiff's credibility because

22  Plaintiff did not allege that his mental symptoms became disabling until 2008, and Plaintiff did not

23  engage in substantial gainful activity after 2007.  The fact that Plaintiff worked prior to his alleged

24  disability onset date says little about his credibility of his symptom testimony.  However, as

25  discussed above, the inconsistencies in Plaintiff's testimony constitute a clear and convincing basis

26  to discount Plaintiff's reports of the extent of his symptoms.  As such, the ALJ's consideration of

27  Plaintiff's work history is harmless error.

28

17

1    In sum, the ALJ cited specific, clear, and convincing reasons supported by the record to

2 discredit Plaintiff's testimony, and the ALJ's interpretation of the evidence was reasonable and is

3 entitled to deference.

4                              **VI.  CONCLUSION AND ORDER**

5    Based on the foregoing, the Court finds the ALJ's decision is supported by substantial

6 evidence of the record as a whole and is based on proper legal standards.  Accordingly, the Court

7 DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social

8 Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn

9 W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Francisco T.

10 Montelongo.

11

12

13 IT IS SO ORDERED.

14    Dated:    **September 15, 2014**                    **/s/ Sheila K. Oberto**
                                          UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28